## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

BRENDA D.[1],

                    Plaintiff,

          v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

                    Defendant.

Case No. 2:20-cv-1414-SI

**OPINION AND ORDER**

Bruce W. Brewer, PO Box 421, West Linn, OR 97068. Of Attorney for Plaintiff.

Scott Erik Asphaug, Acting United States Attorney; Renata Gowie, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Sarah L. Martin, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

          Brenda D. (Plaintiff) brings this action under § 205(g) of the Social Security Act (Act), *as amended*, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner

---

          [1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

of the Social Security Administration (Commissioner) denying Plaintiff's application for disability insurance benefits (DIB) under Title II of the Act and for supplemental security income (SSI) under Title XVI of the Act. For the reasons explained below, the Court AFFIRMS the Commissioner's decision.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

## A.  Plaintiff's Application

On February 3, 2014, Plaintiff applied for DIB and SSI alleging that her disability began on March 1, 2012. AR 166. Plaintiff was born on June 23, 1969 and was 42 years old as of the alleged disability onset date. AR 273. After a hearing, an administrative law judge (ALJ) denied Plaintiff's claims on November 25, 2016. AR 163-77. The Appeals Council remanded the case back to the ALJ on August 15, 2018, requiring the ALJ to obtain additional evidence about and consider further Plaintiff's mental impairments. AR 183-87. The ALJ held a second hearing and issued a second decision on September 18, 2019. AR 18-32. This decision is partially favorable to Plaintiff; it denies DIB and grants SSI, beginning on June 22, 2019, the date that claimant's age category changed to a "person closing approaching advanced age" under 20 C.F.R. §§ 404.1563, 416.963. AR 19. Plaintiff agrees that she is disabled but appeals the ALJ's September 18, 2019 decision that did not find her disabled before June 22, 2019. Plaintiff appealed this decision to the Appeals Council, which denied review on June 18, 2020, making the ALJ's opinion the final decision of the Commissioner. AR 1. Plaintiff appeals before this Court her disability onset date as determined by the ALJ.

## B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1.     Is the claimant performing "substantial gainful activity?" 20 C.F.R.
       §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
       significant mental or physical duties done or intended to be done for pay
       or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
       such work, she is not disabled within the meaning of the Act. 20 C.F.R.
       §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
       substantial gainful activity, the analysis proceeds to step two.

2.     Is the claimant's impairment "severe" under the Commissioner's
       regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An
       impairment or combination of impairments is "severe" if it significantly
       limits the claimant's physical or mental ability to do basic work activities.
       20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death,
       this impairment must have lasted or be expected to last for a continuous
       period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the
       claimant does not have a severe impairment, the analysis ends. 20 C.F.R.
       §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe
       impairment, the analysis proceeds to step three.

3.     Does the claimant's severe impairment "meet or equal" one or more of the
       impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,
       then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii),
       416.920(a)(4)(iii). If the impairment does not meet or equal one or more of
       the listed impairments, the analysis continues. At that point, the ALJ must
       evaluate medical and other relevant evidence to assess and determine the
       claimant's "residual functional capacity" (RFC). This is an assessment of
       work-related activities that the claimant may still perform on a regular and
       continuing basis, despite any limitations imposed by his or her
       impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e),
       416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis
       proceeds to step four.

4.     Can the claimant perform his or her "past relevant work" with this RFC
       assessment? If so, then the claimant is not disabled. 20 C.F.R.
       §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform
       his or her past relevant work, the analysis proceeds to step five.

5.     Considering the claimant's RFC and age, education, and work experience,
       is the claimant able to make an adjustment to other work that exists in

significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

As a threshold matter for Plaintiff's DIB claim, the ALJ found that Plaintiff met the insured status requirements of the Act through March 31, 2017. AR 21. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. *Id.* At step two, the ALJ determined that after Plaintiff's alleged onset date of disability, Plaintiff had the following severe impairments: fibromyalgia; status post neurostimulator implant for urinary retention; status post umbilical hernia repair; status post right knee arthroscopy; persistent depressive disorder; borderline personality disorder; history of Lyme disease; generalized anxiety disorder; and right knee chondromalacia. AR 21-22.

At step three, the ALJ found that since March 1, 2012, Plaintiff had not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App'x 1. AR 22-24. The ALJ then determined that since March 1, 2012, Plaintiff had the RFC to perform sedentary work except that she can occasionally climb ramps and stairs but cannot climb ladders, ropes and scaffolds, and that she is limited to no more than occasional stooping, kneeling, crouching, and crawling. AR 24. The ALJ also found that Plaintiff can only understand or remember simple and short instructions due to mental impairments consistent with level two reasoning that can be learned in 30 days or less, and that she is limited to frequent interactive contact with the public, coworkers, or supervisors. *Id.*

At step four, the ALJ concluded that Plaintiff could not perform any past relevant work, such as bartender, cashier checker, servers, office helper, and administrative clerk. AR 29. At step five, the ALJ found that before June 22, 2019 there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, including eye glass assembler, jewelry preparer, and addresser. AR 30-31. The ALJ determined, however, that beginning on June 22, 2019, with Plaintiff's new age category, there are no jobs that exist in significant numbers in the national economy that Plaintiff could perform. AR 31. Thus, the ALJ found Plaintiff was not disabled before June 22, 2019, but became disabled on that date and continued to be disabled through the date of the ALJ's decision. AR 19.

## DISCUSSION

Plaintiff raises three claims of error: (1) the ALJ erred in discounting Plaintiff's subjective symptom testimony; (2) the ALJ erred in discounting lay witness testimony; and (3) the ALJ erred in evaluating the medical opinion testimony. Within her argument about lay

witness testimony and the medical evidence, however, Plaintiff briefly argues that the ALJ erred

at step two. The Court thus considers this argument as a threshold matter.

## A.  Step Two

At step two the ALJ found the following:

> The claimant has a number of other impairments including . . .
> migraines/headaches that have not been assessed by an acceptable
> medical source. Additionally, the claimant alleges problems with
> use of the hands yet it does not appear that she has any actual
> related diagnosis or findings of weakness or loss of sensation on
> examinations. Without more, these conditions are non-medically
> determinable impairments for which no functional limitations can
> be assessed.

AR 22 (citations omitted).

Plaintiff states that the ALJ erred at step two in failing to find her migraines or headaches

a severe impairment, noting how many times the words headache and migraine are found in the

record. That does not, however, show that there is medical evidence from an acceptable medical

source establishing the condition. Plaintiff cites to no such evidence.

Plaintiff also argues that her hand condition was a severe, medically determinable

impairment, citing a medical test report noting that she had a test result that is "consistent with

Raynaud's phenomenon which is associated with a wide variety of etiologies." AR 569. There is

no discussion of any symptoms Plaintiff may have been suffering due to any potential Raynaud's

phenomenon.[2] Further, Plaintiff cites no records showing a medical diagnosis relating to her

hands, findings regarding a hand condition or related limitations, findings that any hand

---

[2] Raynaud's phenomenon can cause fingers that turn blue when cold or during times of
stress and then red when warmed, hands that may become swollen and painful when warmed,
sores on the finger pads in severe cases, and, rarely, gangrene in the fingers. John's Hopkins
Medicine, Health Conditions and Diseases, *Raynaud's Phenomenon*,
https://www.hopkinsmedicine.org/health/conditions-and-diseases/raynauds-phenomenon.

condition would last more than 12 months, or findings that any hand condition would significantly impair her ability to work.

Plaintiff fails to show that her headaches or any hand impairment were severe impairments established by medical evidence from an acceptable medical source. The ALJ's step two conclusions are supported by substantial evidence in the record.

## B.  Plaintiff's Subjective Symptom Testimony

There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill*, 12 F.3d at 918. Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

An ALJ is required to specifically identify what evidence contradicts what testimony. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (stating that an ALJ may not vaguely conclude that "a claimant's testimony is 'not consistent with the objective medical evidence,' without any 'specific findings in support' of that conclusion" (quoting *Vasquez*, 572 F.3d at 592). "[A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination" but must "specify which testimony she finds not credible," and the district court may not "comb the administrative record to find specific conflicts." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015) (quoting *Burrell v. Colvin*, 775 F.3d 1133, 1139 (9th Cir. 2014)); *see also Smolen*, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."); *Dodrill*, 12 F.3d at 918 (holding that it is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible"); *Nan B. v. Saul*, 2020 WL 6636221, at *6 (D. Or. Nov. 12, 2020) (finding that the ALJ's summary of the medical record, statement that the claimant's testimony "was not entirely consistent with the medical evidence and other evidence 'for the reasons explained in this decision,'" and failure to "discuss which testimony about what limitations he is crediting or discrediting, and why" was legal error). Instead, the ALJ must

"identify the testimony she found not credible" and "link that testimony to the particular parts of the record supporting her non-credibility determination." *Brown-Hunter*, 806 F.3d at 494. Failure to do so is legal error. *Id.*

Here, the ALJ gave several reasons for discounting Plaintiff's testimony. Plaintiff quotes the ALJ's opinion and disputes each sentence. The Court categorizes the ALJ's discussion and Plaintiff's challenges by category of reason.

### 1. Failure to Seek Treatment

The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. s§ 416.929(c)(3); § 404.1529(c)(3). Thus, failure to seek treatment is a basis on which to deny disability. 20 C.F.R. §§ 416.930(b); § 404.1530(b). If, however, the claimant has a good reason for not seeking treatment, failure to seek treatment is not a proper basis for rejecting the claimant's subjective symptoms. *See* 20 C.F.R. §§ 416.930(c); § 404.1530(c); *see also Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995) ("We certainly agree with all the other circuits that a disabled claimant cannot be denied benefits for failing to obtain medical treatment that would ameliorate his condition if he cannot afford that treatment."). Thus, an ALJ must consider a claimant's reasons for failing to adhere to recommended treatment before making an adverse credibility finding. *See Smolen*, 80 F.3d at 1284; *see also* Social Security Rule (SSR) 16-3p, *available at* 2017 WL 5180304, at *9 (Oct. 25, 2017) (explaining that an ALJ "may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints" and that the Commissioner "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints").

The ALJ noted Plaintiff's failure to attend physical therapy, to see a sleep specialist or obtain a sleep study, and to seek mental health treatment except when in crisis. Plaintiff argues that the record is ambiguous whether Plaintiff needed more physical therapy and failed to obtain it and that the record does not support that she had insurance to cover sleep study. Plaintiff does not address the ALJ's finding about Plaintiff's failure to obtain mental health treatment.

Regarding Plaintiff's failure to attend physical therapy, her records from physical therapy are not in the administrative record. The ALJ concluded that Plaintiff "did not attend [physical therapy] regularly and only for a short time," citing treatment notes from Plaintiff's primary care provider that reference physical therapy. The ALJ, however, cited only two notes—a note from August 28, 2013, referring Plaintiff to physical therapy, AR 660, and a note from December 3, 2013, which states that Plaintiff went to physical therapy the previous week but is now putting physical therapy on hold because of Plaintiff's fatigue. AR 647. Plaintiff's doctor also noted on September 24, 2013, that Plaintiff was "going to physical therapy, goal is to reduce the narcotics." AR 655. On November 4, 2013, Plaintiff's treating provider noted that Plaintiff's referral to physical therapy had expired and Plaintiff requested another referral so she could make an appointment. AR 650. The Commissioner argues that this notation shows that Plaintiff had never even started physical therapy, but the September 24, 2013 notation belies that interpretation. The November 4, 2013, notation merely shows that Plaintiff was continuing with ongoing physical therapy and needed an active doctor's referral to do so.

The evidence in the record shows that Plaintiff continued steadily with physical therapy until December 4, 2013, when she stopped due to her fatigue. The ALJ did not consider the reason why Plaintiff stopped physical therapy, in contravention of 20 C.F.R. §§ 416.930(c) and 404.1530(c). Further, in the same visit Plaintiff's treating doctor's office noted that Plaintiff

was stopping physical therapy due to fatigue, the chart note also states that Plaintiff "had acute

pain so she went to the ER." AR 647. This is additional support that she did not stop physical

therapy because her pain was minimal. The ALJ erred in concluding that failure to seek physical

therapy treatment was a reason to discount Plaintiff's testimony.

Regarding seeing a sleep specialist or obtaining a sleep study, Plaintiff argues that the

record is ambiguous as to why Plaintiff did not obtain a sleep study and the ALJ never asked or

otherwise obtained clarification. The record contains two references to a sleep study: a

February 14, 2013 chart note stating that Plaintiff will follow up with a sleep study after her

medications were adjusted, AR 698, and a January 31, 2013 chart note stating that she would

have insurance in two weeks and is open to a sleep study, AR 706. Plaintiff testified that she had

insurance until January 2018. AR 93. The record shows she obtained various type of treatment

from 2013 through 2018, during the time she had insurance. Plaintiff argues that there is no

affirmative evidence in the record that a sleep study would have been a covered treatment, but

the Court disagrees that type of evidence is required. An ALJ is not required to ask whether

every type of treatment recommended by a claimant's doctors would have been covered by the

claimant's insurance plan. There is no evidence that a sleep study was not covered or that

Plaintiff did not obtain one due to financial hardship. This failure by Plaintiff, along with

Plaintiff's failure to obtain mental health treatment except when in crisis, are failures in

treatment that form a clear and convincing reason to discount Plaintiff's subjective testimony.

### 2.  Conservative Course of Treatment

Routine, conservative treatment can be sufficient to discount a claimant's subjective

testimony regarding the limitations caused by an impairment. *Parra v. Astrue*, 481 F.3d

742, 750-51 (9th Cir. 2007). Not seeking an "aggressive treatment program" permits the

inference that symptoms were not "as all-disabling" as the claimant reported. *Tommasetti v.*

*Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3). If, however, the claimant has a good reason for not seeking more aggressive treatment, conservative treatment is not a proper basis for rejecting the claimant's subjective symptoms. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). An ALJ is not required to ask the claimant at the hearing about every inconsistency in the record that led the ALJ to find a claimant's testimony not reliable. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

The ALJ noted that Plaintiff had treatment through trigger point injections. The ALJ commented that the frequency with which Plaintiff requested the treatment suggests that the treatments were effective. AR 26. The record supports this conclusion. *See* AR 1524 (March 2, 2018 chart note that Plaintiff had been getting monthly trigger point injections, she tolerated them "very well," and noting that she received injections three weeks ago with "good results"). Plaintiff argues that the treatment could not have been effective if it was continuously needed, but that is not the barometer of an effective "treatment." For example, if medication effectively *controls* a condition, the claimant may need to take that medication for years, or forever, but the condition will not be considered disabling if it can be effectively *controlled* with ongoing medication. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."). Thus, the ALJ did not err in finding that the fact that the regular, ongoing trigger point injection treatment that were effective in controlling Plaintiff's pain discounted her allegations of disabling limitations.

### 3. Activities of Daily Living

The ALJ also found that despite stating in her function report that she needed help

dressing and performing other basic self-care, Plaintiff had at times successfully lived alone.

Although Plaintiff claimed that she often lived with other individuals after separating with her

now-ex-husband, she reported sporadically living alone. Plaintiff described that on a typical day,

she took her dog on a short walk, tried to clean the kitchen, and sometimes took a shower.

AR 58, 1414.

Daily living activities may provide a basis for discounting subjective symptoms if the

plaintiff's activities either contradict his or her testimony or meet the threshold for transferable

work skills. *See Molina*, 674 F.3d at 1112-13; *Orn*, 495 F.3d at 639. For daily activities to

discount subjective symptom testimony, the activities do not need to be equivalent to full-time

work; it is sufficient that the plaintiff's activities "contradict claims of a totally debilitating

impairment." *Molina*, 674 F.3d at 1113. A claimant, however, need not be utterly incapacitated

to receive disability benefits, and completion of certain routine activities is insufficient to

discount subjective symptom testimony. *See id.* at 1112-13 (noting that a "claimant need not

vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)); *Benecke

v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated'

in order to be disabled."). The Ninth Circuit "has repeatedly asserted that the mere fact that a

plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited

walking for exercise, does not in any way detract from her credibility as to her overall

disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*,

157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity be inconsistent with the

plaintiff's claimed limitations to be relevant to his or her credibility and noting that "disability

claimants should not be penalized for attempting to lead normal lives in the face of their

limitations"). Moreover, particularly with certain conditions, cycles of improvement may be a common occurrence, and it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding that a plaintiff is capable of working. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

Although Plaintiff was able to live alone at times, she frequently needed help with basic day-to-day activities. Plaintiff has provided a number of specific examples where she sought help for very simple tasks, including getting dressed, going grocery shopping, and making meals. *See, e.g.*, AR 1414. Plaintiff and the Commissioner disagree on details such as the length of Plaintiff's walks, the extent of her dog-caring activities, and her overall need for assistance from others. Even accepting the Commissioner's view of the factual record, it is clear that between the alleged disability onset date in 2012 and the 2019 date when her age category changed under the Act, Plaintiff was experiencing significant challenges in her everyday life and engaged in limited daily activities. What she could manage to perform were the types of activities the Ninth Circuit has cautioned do not detract from a claimant's credibility with respect to alleged disabling conditions. Therefore, the ALJ erred in discounting Plaintiff's symptom testimony because of Plaintiff's activities of daily living. Because the ALJ provided other reasons, however, this error is harmless.

### 4. Objective Medical Evidence

An ALJ may consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain." *Rollins*, 261 F.3d at 857. The ALJ may not, however, reject subjective testimony solely because it was not fully corroborated by objective medical evidence. *Robbins*, 466 F.3d at 883; *see also* 20 C.F.R. § 404.1529(c)(2) (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or

other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements").

Here, the ALJ properly discounted Plaintiff's symptom testimony based, in part, on the lack of objective medical evidence. Because the ALJ had other valid reasons for discounting Plaintiff's symptom testimony, the ALJ properly considered that the objective medical evidence did not support Plaintiff's symptom testimony when evaluating Plaintiff's symptom testimony.

## C.  Lay Witness Statements

As part of the ALJ's RFC finding, the ALJ accepted the third-party statements regarding Plaintiff's limitations as "descriptive of their perceptions." AR 26. The ALJ, however, determined that the limitations that the lay witnesses observed in Plaintiff are "not fully consistent with the medical and other evidence of the record." *Id.* The ALJ found that:

> the headache and upper extremity issues are not medically
> determinable impairments and even if they were, there are few
> related complaints much less any objective evidence. Furthermore,
> the individuals are understandably sympathetic to their family
> member and therefore be apt to overstate functional limitations on
> their behalf.

*Id.* The ALJ also concluded that the RFC was "generally consistent" with the lay witness statements "containing both physical and mental limitations in the areas identified." *Id.*

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.* "If the ALJ wishes to discount the testimony of the lay witnesses, [the ALJ] must give reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d at 919. The ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness

basis." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). Instead, "if the ALJ gives

germane reasons for rejecting testimony by one witness, the ALJ need only point to those

reasons when rejecting similar testimony by a different witness." *Id.*

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony,

either individually or in the aggregate." *Id.* at 1115 (quoting *Nguyen v. Chater*, 100

F.3d 1462, 1467 (9th Cir. 1996)). This error may be harmless "where the testimony is similar to

other testimony that the ALJ validly discounted, or where the testimony is contradicted by more

reliable medical evidence that the ALJ credited." *See id.* at 1118-19. Additionally, "an ALJ's

failure to comment upon lay witness testimony is harmless where 'the same evidence that the

ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'"

*Id.* at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)).

In the Ninth Circuit, inconsistency with the objective medical evidence is considered a

germane reason for rejecting lay witness testimony. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218;

*Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). A lack of support or corroboration by

objective medical evidence, however, is not a germane reason to discount lay witness testimony.

*Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) ("Nor under our law could the ALJ

discredit her lay testimony as not supported by the medical evidence in the record."); *Hudson v.

Astrue*, 2013 WL 1100998, at *8 (D. Or. Mar. 15, 2013) ("[L]ay testimony cannot be rejected

simply because it is *uncorroborated* by the objective medical evidence; the ALJ, however, is

permitted to reject lay testimony when it *conflicts* with the medical evidence."). In other words,

the ALJ can "reject [lay witness] reports . . . based only on affirmative contradictory evidence in

the medical record, not absence of supporting evidence." *Rivera v. Colvin*, 2013 WL 6002445,

at *4 (D. Or. Nov. 12, 2013); *cf.* SSR 16-3p, at *6 ("If we cannot make a disability determination

or decision that is fully favorable based solely on objective medical evidence, then we carefully

consider other evidence in the record . . . includ[ing] statements from . . . other sources that

might have information about the individual's symptoms").

Plaintiff's ex-husband, Darrin D., completed a third-party function report in

September 2014, when they were still living together. AR 25. Darrin stated that Plaintiff's daily

activities involved trying to do household chores and caring for pets, and that she needed

assistance with shoes. *Id.* He stated that Plaintiff could make simple meals, but was limited to

lifting five pounds and walking one block at a time, and did not finish things she started. *Id.*

Otherwise, he did not indicate that Plaintiff required help with self-care to the degree she

described in her own function reports. *Id.*

Nancy P., Plaintiff's mother, who saw Plaintiff regularly and had previously lived with

her from March to December 2015, submitted a statement in July 2016. AR 25. She stated that

Plaintiff had difficulty getting out of bed and that she would fall, have memory problems, sleep

problems, and headaches. *Id.*

Kirsten M., Plaintiff's daughter-in-law who had known her for the previous 10 years,

submitted a statement in August 2019. AR 25. Kirsten noted that Plaintiff was homeless and

stayed with Kirsten regularly, and that Plaintiff's condition deteriorated over the time Kirsten

had known Plaintiff. Kirsten indicated that Plaintiff's impairment had limited her "ability to lift,

squat, bend, stand, reach, walk, sit, kneel, hear, climb stairs, see, remember, complete tasks,

concentrate, understand and use hands." *Id.*

PAGE 18 – OPINION AND ORDER

The ALJ considered the testimony from the three lay witnesses. The ALJ discounted them as not fully consistent with the medical evidence in the record.[3] The ALJ specifically noted that Plaintiff's headache and upper extremity allegations were not medically determinable impairments and thus not disabling. As found above, the ALJ did not err in his step two finding. The lay witnesses, however, also made statements regarding Plaintiff's ability to walk, stand, sit, kneel, climb, get out bed, and generally function. The ALJ did not specifically address how those statements were inconsistent with the medical evidence. The Court finds, however, that this testimony was similar to Plaintiff's testimony, which the ALJ discounted. Thus, any error was harmless. *Molina*, 674 F.3d at 1122.

## D.  Medical Opinions

Plaintiff alleges that the ALJ erroneously rejected medical opinions from both treating nurse practitioner Ms. Linda Hatch and consultative examiner Dr. Michelle Whitehead. Defendants disagree.

### 1.  Ms. Linda Hatch

#### a.  Standards

SSR 06-03p[4] in effect at the time Plaintiff filed her claim defined "acceptable medical sources" as licensed physicians, licensed or certified psychologists, licensed optometrists,

---

[3] The ALJ also rejected the lay witness statements because of their close relationship to Plaintiff, but the Commissioner concedes that this was not a proper reason to discount lay witness testimony.

[4] For claims filed on or after March 27, 2017, the Commissioner has rescinded SSR-06-03p, broadened the definition of acceptable medical sources to include Advanced Practice Registered Nurses (such as nurse practitioners), audiologists, and physician assistants for impairments within their licensed scope of practice, and clarified that all medical sources, not just acceptable medical sources, can provide evidence that will be considered medical opinions. *See* 20 C.F.R. §§ 404.1502, 416.902; 82 F. Reg. 8544; 82 F. Reg. 15263.

licensed podiatrists, and qualified speech pathologists. SSR 06-03p, *available at* 2006 WL

at 2329939 (Aug. 9, 2006). Health care providers who are not "acceptable medical sources,"

such as "nurse practitioners, physician's assistants, chiropractors, audiologists, and therapists,"

are still considered "medical sources" under the regulations, and the ALJ can use these other

medical source opinions in determining the "severity of [the individual's] impairment(s) and how

it affects [the individual's] ability to work." 20 C.F.R. § 404.1513(d). An "other" medical source

may not, however, provide medical opinions or be given "controlling" weight as a treating

medical source. *See* SSR 06-03p. Because Ms. Hatch is a nurse practitioner, she is considered an

"other" medical source.

An ALJ may not reject the competent testimony of "other" medical sources without

comment. *Stout*, 454 F.3d at 1053. Like with lay witnesses, to reject the competent testimony of

"other" medical sources, the ALJ need only give "reasons germane to each witness for doing so."

*Molina*, 674 F.3d at 1111 (quoting *Turner.*, 613 F.3d at 1224). In rejecting such testimony, the

ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis.

Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need

only point to those reasons when rejecting similar testimony by a different witness." *Id*. at 1114.

The ALJ also may "draw inferences logically flowing from the evidence." *Sample v.*

*Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

### b.  Analysis

Ms. Hatch completed a check-box questionnaire about Plaintiff's functioning, opining

that Plaintiff could not sit, stand, and walk sufficient to perform full-time work; would have

excessive absences; would be off task 20% of the time; and would have additional limitations.

AR 1405-10. Plaintiff argues that Ms. Hatch's questionnaire, if credited, would "vitiate" the

ALJ's RFC and require the issuance of a favorable decision. In rejecting it, the ALJ provided

three reasons: (1) that Ms. Hatch relied on non-severe impairments; (2) that Ms. Hatch failed to identify the basis for the significant limitations she found regarding Plaintiff's use of her upper extremities; and (3) that Ms. Hatch failed to explain why she found that Plaintiff would have excessive absenteeism and be off task 20% of the time.

### i.    Non-severe impairments

In discounting Ms. Hatch's opinion, the ALJ found:

> While Ms. Hatch has been a long time treating source, she refers to and relies on several conditions that either have not been diagnosed as medically determinable impairment by an acceptable medical source or that are not shown to be severe.

AR 28. Plaintiff argues that the foregoing is not sufficiently specific to allow court review because it is unclear what conditions are not medically determinable versus not severe. The Court rejects this argument, because it does not matter whether a condition is not medically determinable or not severe, either way it is clear that the ALJ is referencing conditions that failed at step two. Plaintiff also argues that the ALJ erred in his rejection of hand limitations and headaches at step two. As previously discussed, however, the Court, affirms the ALJ's step two findings. Thus, it is a germane reason to discount Ms. Hatch's opinion because it was based in part on Plaintiff's non-severe impairments.

### ii.    Limitations with upper extremities

Plaintiff next argues that the ALJ erred in discounting Ms. Hatch's opinion for failing to "identify a basis for the significant limitations on use of the upper extremities." AR 28. Plaintiff argues that Ms. Hatch identified that she based her opinions on the "history & medical file,

progress & office notes, [and] physical examinations." AR 1409.[5] Plaintiff argues that the record

supports Ms. Hatch's finding, citing the one test result regarding Plaintiff's hand.

Ms. Hatch's general comment about the wide source of materials supporting all of her

opinions is too broad to show the basis of her specific finding regarding Plaintiff's hand

limitation. Ms. Hatch limited Plaintiff to reaching and handling for only 30 minutes per day.

Such a significant limitation requires more than the broad description of supporting materials for

all Ms. Hatch's opinions. The Ninth Circuit has held that ALJs may reject check-box evaluations

from medical sources when they "[do] not contain any explanations of the bases of their

conclusions." *Crane v. Shalala*, 76 F.3d 251 (9th Cir. 1996). This may be ameliorated when the

records of the opining expert contain the necessary support. *See Garrison*, 759 F.3d at 1013. The

single test result cited by Plaintiff, however, is not substantial evidence in the record supporting

such significant limitations as found by Ms. Hatch. That test merely found that Plaintiff's

condition is consistent with Raynaud's phenomenon, which causes a variety of symptoms. For

example, fingers turning blue when cold would not support the limitations opined by Ms. Hatch.

The ALJ's conclusion that Ms. Hatch failed to identify a basis for the significant limitations on

Plaintiff's use of her upper extremities is a germane reason to discount Ms. Hatch's opinion.

### iii. Excessive absences

The ALJ stated that "Ms. Hatch also did not describe why the claimant would have

excessive absences" and that "Ms. Hatch's opinions regarding the claimant's need for additional

breaks and time off-task are given no weight for the reasons stated above." AR 28. Plaintiff does

not address the ALJ's reason regarding excessive absences, but instead argues that the ALJ erred

---

[5] Ms. Hatch also listed as a basis for her opinions "psychological evaluations & reports/opinions." AR 1409.

in his reason regarding time off-task. Regarding excessive absences, Ms. Hatch left blank the section of the form to explain the basis for her finding. Thus, the ALJ did not err in finding that opinion was not properly supported and this is a germane reason.

Regarding Plaintiff's time off-task, even if Plaintiff is correct that the ALJ erred by discounting Ms. Hatch's opinion regarding time off-task "for the reasons state above," such error would be harmless because the ALJ provided three other germane reasons for discounting Ms. Hatch's opinion. Thus, the ALJ did not err in evaluating Ms. Hatch's testimony.

### 2. Dr. Michelle Whitehead

#### a. Standards

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle*, 533 F.3d at 1164. The Ninth Circuit and the Commissioner[6] distinguish between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. *Garrison*, 759 F.3d at 1012. Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); *see also* 20 C.F.R. §§ 404.1527(c)(1), (2); 416.927(c)(1), (2). If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, a court gives the treating physician's opinion controlling weight. *Holohan*, 246 F.3d at 1202; see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). A court may reject a treating doctor's uncontradicted opinion only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc.*

---

[6] Because Plaintiff filed her application before March 17, 2017, the application is governed by 20 C.F.R. §§ 404.1527 and 416.927, and the revised rules relating to the consideration of medical opinion testimony do not apply.

*Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If the opinion of another physician contradicts a treating doctor's opinion, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Orn*, 495 F.3d at 631; *see also* 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1). As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of another physician contradicts the opinion of an examining physician, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ may reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995).

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or that the opinion is brief, conclusory, and inadequately supported by clinical findings. *Bray*, 554 F.3d at 1228; *Tommasetti*, 533 F.3d at 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1042-43. An ALJ errs by rejecting or assigning minimal weight to a medical opinion "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis" for

the ALJ's conclusion. *Garrison¸* 759 F.3d at 1013; *see also Smolen*, 80 F.3d at 1286 (noting that an ALJ effectively rejects an opinion when he or she ignores it).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick*, 157 F.3d at 725). In other words, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). "[T]he opinion of a non-examining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citations omitted); *but see id.* at 600 (opinions of non-treating or nonexamining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record).

### b.  Analysis

Dr. Whitehead conducted an examination and opined that Plaintiff would have some moderate and marked mental limitations, basing the social limitations on Plaintiff's "emotional outbursts" and "irritability." AR 1411-19. The ALJ gave the opinion partial weight because the marked limitations were based on Plaintiff's self-reported symptoms. AR 28-29. Plaintiff contends that the ALJ improperly rejected Dr. Whitehead's opinion because it was based on self-reporting and improperly undermined Plaintiff's credibility. Plaintiff asserts that Dr. Whitehead relied on her review of records, in addition to Plaintiff's self-report.

"If a treating provider's opinions are based to a large extent on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014)

(quotation marks omitted). A review of Dr. Whitehead's report shows that her diagnoses was primarily based on Plaintiff's self-reports. Her mental status examination was benign. AR 1413-14. Further, the bases listed for the limitations was chronic pain, medical problems, behavioral disturbance, irritability, suicidal ideation, depression, and anxiety, nearly all of which are primarily based on Plaintiff's self-reports. AR 1417.

Additionally, the ALJ, upon reviewing the record in full, found that treating providers who interacted with Plaintiff more regularly described her as "pleasant and cooperative," while treating providers recorded no significant outbursts. AR 29. Dr. Whitehead, by contrast, only saw Plaintiff once, and described her as "tearful," "over-emotional, mildly dramatic, with a depressed mood." AR 1413.  Dr. Whitehead also noted, however, that Plaintiff was "logical and coherent." The Court finds that the did not err in discounting Dr. Whitehead's opinion regarding marked to moderate limitations.

## CONCLUSION

The Court AFFIRMS the Commissioner's decision that Plaintiff was not disabled between the alleged onset date and June 22, 2019.

**IT IS SO ORDERED**.

DATED this 9th day of November, 2021.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge